UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

UNITED STATES OF AMERICA                    CRIMINAL ACTION

VERSUS                                              No. 18-150

JERRY PEA                                            SECTION I

## ORDER & REASONS

Before the Court is defendant Jerry Pea's ("Pea") third motion to withdraw his guilty plea as to counts one and seven of the eight-count indictment.[1] On June 10, 2019, the Court conducted an evidentiary hearing with respect to such motion.[2] For the following reasons, the motion is denied.

### I.

On May 15, 2018, the government filed a criminal complaint against Pea and his co-defendant James Jackson ("Jackson").[3] On July 12, 2018, Pea and Jackson were charged in an eight-count indictment.[4] Pea was charged—in seven of the eight counts—with conspiracy to distribute and possess with the intent to distribute cocaine base and heroin in violation of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(C), and 846;[5] distribution of cocaine base and/or heroin in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(C) and Title 18, United States Code, Section 2;[6] and possession of a firearm in furtherance of a

---

[1] R. Doc. No. 84; *see generally* R. Doc. No. 25.
[2] *See* R. Doc. No. 87.
[3] R. Doc. No. 1.
[4] R. Doc. No. 25.
[5] Count one. R. Doc. No. 25, at 1.
[6] Counts two through six. R. Doc. No. 25, at 2–3.

1

drug trafficking crime in violation of Title 18, United States Code, Sections 924(c)(1)(A) and 2.[7]

On November 14, 2018, the Court set a date for Pea and Jackson's rearraignment: December 5, 2018.[8] Due to a conflict, however, the Court reset the rearraignment for December 6, 2018,[9] and U.S. District Judge Jane Triche Milazzo presided over the proceeding.[10]

The morning of the rearraignment, Assistant United States Attorney Jeffrey Sandman ("Sandman") informed the Court that Pea and his attorney, Letita Parker-Davis ("Parker-Davis"), had a breakdown in communication and that Pea would no longer plead guilty.[11] That same day, prior to the rearraignment, Parker-Davis filed a motion to withdraw as counsel for Pea, explaining that they could no longer communicate or work together.[12]

Nevertheless, Pea was brought to court, along with Jackson, for the rearraignment proceeding.[13] Pea sat in the courtroom with Jackson while waiting for Parker-Davis to arrive, and once she arrived, Pea informed her that he changed his mind and that he would in fact plead guilty.[14]

---

[7] Count seven. R. Doc. No. 25, at 3.
[8] R. Doc. No. 36.
[9] R. Doc. No. 37.
[10] R. Doc. No. 39.
[11] *See* R. Doc. No. 72, at 2.
[12] R. Doc. No. 38.
[13] R. Doc. No. 72, at 2.
[14] R. Doc. No. 72, at 2.

When the proceeding began, Judge Milazzo first addressed Pea and Parker-Davis with respect to the motion to withdraw:

> **THE COURT**: Before we proceed, Ms. Parker-Davis, you had previously filed a motion to withdraw as counsel of record for Mr. Pea, and that is currently pending before the Court. And so I'm asking you now, do you intend to proceed with the rearraignment and the motion to withdraw? I think . . . we need to address that issue first.
>
> **PARKER-DAVIS**: Your Honor, I'm going to file a motion to strike the motion to withdraw as counsel. I've spoken to Mr. Pea since I filed that motion, and he has indicated to me that he would like to go ahead with the rearraignment this afternoon and that he's satisfied with my services. He's reconsidered his position and he'd like to move forward today.
>
> **THE COURT**: Okay. Is that correct, Mr. Pea?
>
> **PEA**: Yes, ma'am.
>
> **THE COURT**: So you are satisfied with your counsel's services and you no longer wish for her to withdraw?
>
> **PEA**: Yes, ma'am.
>
> **THE COURT**: Thank you.[15]

Thereafter, Judge Milazzo conducted the full rearraignment proceeding, accepted Pea's guilty plea as to counts one and seven, and set a date for sentencing.[16]   On December 11, 2018, the Court dismissed Parker-Davis's motion to withdraw as Pea's counsel.[17]

---

[15] R. Doc. No. 60, at 2–3.

[16] R. Doc. No. 60.

[17] R. Doc. No. 50.

On December 20, 2018, Pea filed, *pro se*, his first motion to withdraw his guilty plea asserting that he was threatened and forced by Sandman, federal agents, and Parker-Davis to plead guilty.[18] Pea also moved the Court for the appointment of new counsel.[19] The Court set a hearing on the motion and ordered Parker-Davis to attend.[20] At the hearing, on January 10, 2019, Pea explained to the Court his reasons for filing the motions, stating that he did not have sufficient time to review the factual basis or plea agreement with Parker-Davis before pleading guilty and that he was surprised that he had been brought to court that day.[21] The Court, albeit skeptical of Pea's reasoning,[22] granted Pea's motion for appointment of new counsel, allowed Parker-Davis to withdraw as counsel for Pea, and ordered that the Federal Public Defender appoint Pea new counsel.[23] The Court also dismissed Pea's motion to withdraw his guilty plea, reserving the right to refile the motion after he conferred with his newly appointed counsel.[24]

On January 31, 2019, Cynthia Cimino ("Cimino") was appointed to represent Pea.[25] On April 23, 2019, Cimino, on behalf of Pea, filed a second motion to withdraw

---

[18] R. Doc. No. 53.
[19] R. Doc. No. 53.
[20] R. Doc. No. 54.
[21] R. Doc. No. 59, at 5.
[22] R. Doc. No. 59, at 6.
[23] R. Doc. No. 57.
[24] R. Doc. No. 57.
[25] R. Doc. No. 58.

his guilty plea.[26]  The Court set the motion for hearing on May 22, 2019.[27]  The government filed a response to Pea's second motion to withdraw his guilty plea.[28]

On May 15, 2019, exactly one week before the scheduled hearing on the second motion to withdraw Pea's guilty plea, Pea filed a motion to substitute counsel; Pea moved the Court to enroll retained counsel, Jonathan D. Goins ("Goins"), and to allow Cimino to withdraw as counsel of record.[29]  Pea also filed a motion to continue the hearing on his motion to withdraw his guilty plea.[30]  After holding a telephone conference with Goins, Cimino, and Sandman, the Court granted the motion to substitute counsel, allowed Goins to file a third motion to withdraw Pea's guilty plea, and continued the hearing on the motion to June 10, 2019.[31]  Pea filed his third motion to withdraw his guilty plea on May 30, 2019,[32] and the government filed a supplemental response on June 3, 2019.[33]

## II.

Pea moves the Court to withdraw his guilty plea, alleging that he was forced and threatened to plead guilty and that he is innocent of the crime charged in count seven—possession of a firearm in furtherance of a drug trafficking crime.[34]

---

[26] R. Doc. No. 68.
[27] R. Doc. No. 70.
[28] R. Doc. No. 72.
[29] R. Doc. No. 76.
[30] R. Doc. No. 77.
[31] R. Doc. No. 82.
[32] R. Doc. No. 84.
[33] R. Doc. No. 86.
[34] R. Doc. No. 84-1, at 2.  The Court notes that in Pea's motion, he asks the Court "to allow him to withdraw his guilty pleas and to go to trial in regard to Count 7 only of the indictment." *Id.* at 3. Finding this request to be contradictory, the Court asked

Specifically, Pea asserts that on the morning of the rearraignment, "because of his reluctance to take a plea . . . he was taken into a room with [Sandman], federal agents, and his attorney and was threatened with more charges than in the original indictment and a harsher sentence if he did not take the plea."[35]  At the June 10, 2019 hearing on the motion, Pea added that Sandman and United States Drug Enforcement Administration ("DEA") Special Agent William Johnson ("Johnson") threatened him by advising him that if he proceeded to trial, Jackson would testify against him and that Sandman also threatened a fourteen-year sentence if he did not plead guilty.

Pea also alleges that his plea was not intelligently entered because he was not able to view the government's video evidence related to count seven before he pled guilty.[36]  Pea asserts that he was first shown the video by his second counsel of record (Cimino), and that the video "further cement[s] . . . that he [is] innocent of Count 7."[37]  After reviewing the motions, the briefs, the video evidence in question, and the testimony at the evidentiary hearing, the Court finds Pea's assertions to be false and not credible.[38]

---

Goins at the evidentiary hearing to clarify Pea's requested relief, and Goins confirmed that Pea seeks to withdraw his guilty plea as to counts one and seven.

[35] R. Doc. No. 84-1, at 2.

[36] R. Doc. No. 84-1, at 2.

[37] R. Doc. No. 84-1, at 2.

[38] Prior to the evidentiary hearing, the Court reviewed the video evidence underlying Pea's assertions of innocence.  The government provided a copy of the video to the Court and gave notice of the disclosure to Pea's counsel.

**A.**

At the outset, the Court notes that Pea's allegations that he was forced and threatened to plead guilty on December 6, 2018 and that he is innocent of the offense charged in count seven are in stark contrast to the representations Pea made to the Court under oath. At the rearraignment proceeding, after Judge Milazzo ensured that he was competent to enter a plea,[39] Pea stated that he intended to plead guilty to counts one and seven in accordance with his plea agreement.[40] Judge Milazzo detailed each of the charges to which Pea was pleading guilty, and she explained the elements of those offenses.[41] Judge Milazzo asked Pea if he understood the charges against him, and he confirmed that he understood.[42] Judge Milazzo also informed Pea of the maximum possible sentences that could be imposed on him as to counts one and seven, including the mandatory minimum sentences as to each count, and that any sentence imposed as to count seven would run consecutively to a sentence imposed as to count one.[43] Pea indicated that he understood the maximum and minimum sentences that could be imposed on him.[44] Judge Milazzo also asked Pea if anyone had represented to him what sentence he might receive, other than the mandatory minimum sentence, if the Court accepted his guilty plea, and Pea stated that no one had done so.[45]

---

[39] R. Doc. No. 60, at 4–5.
[40] R. Doc. No. 60, at 7.
[41] R. Doc. No. 60, at 8–13, 15–17.
[42] R. Doc. No. 60, at 17.
[43] R. Doc. No. 60, at 18.
[44] R. Doc. No. 60, at 18, 20–21.
[45] R. Doc. No. 60, at 39.

Judge Milazzo explained to Pea all of the rights that he was waiving and giving up by pleading guilty: the right to remain silent, the right to a speedy and public trial by jury or judge whereby the government would have to prove his guilt beyond a reasonable doubt, the right to call witnesses, and the right to appeal any conviction or sentence.[46] Pea confirmed that he was willing to give up his right to trial, that he was pleading guilty because he was guilty of the crimes charged against him, and that he committed the acts charged in counts one and seven.[47]

Pea specifically advised the Court that he was not pleading guilty due to any threats:

> **THE COURT**: Have you been influenced, induced or persuaded in any manner to plead guilty because of promises of leniency or other things made by anyone?
>
> **PEA**: No, ma'am.
>
> . . .
>
> **THE COURT**: Have you been influenced, induced or persuaded in any manner to plead guilty because of threats made by anyone?
>
> **PEA**: No, ma'am.[48]

Pea also stated that he was satisfied with Parker-Davis's representation and that he understood the consequences of his plea:

> **THE COURT**: Have you had sufficient time to discuss with your attorney the facts of your case and any possible defenses you might have?

---

[46] R. Doc. No. 60, at 22–25.
[47] R. Doc. No. 60, at 26–27.
[48] R. Doc. No. 60, at 26.

**DEFENDANT PEA**: Yes, ma'am.

. . .

**THE COURT**: Are you satisfied with the advice and services of your attorney, Mr. Pea?

**DEFENDANT PEA**: Yes, ma'am.[49]

. . .

**THE COURT**: Okay. Mr. Pea, I'm going to ask you again, do you fully understand the charges against you?

**DEFENDANT PEA**: Yes, ma'am.

**THE COURT**: Do you fully understand the consequences of your guilty plea?

**DEFENDANT PEA**: Yes, ma'am.

**THE COURT**: Are you pleading guilty because you are in fact guilty?

**DEFENDANT PEA**: Yes, ma'am.

**THE COURT**: Are you pleading guilty voluntarily and of your own free will?

**DEFENDANT PEA**: Yes, ma'am.

**THE COURT**: Although you have indicated through the proceedings a desire to plead guilty, do you understand at this very moment that you still have the right to enter a not guilty plea?

**DEFENDANT PEA**: Yes, ma'am.

**THE COURT**: And so now I'm going to ask you again: How do you wish to plead as to Counts 1 and 7 of the indictment?

**DEFENDANT PEA**: Guilty.

---

[49] R. Doc. No. 60, at 26–27.

Pea's declarations at the rearraignment proceeding are presumed to be truthful. "As [the Fifth Circuit] has observed, '[s]olemn declarations in open court carry a strong presumption of verity.'" *United States v. Adam*, 296 F.3d 327, 333 (5th Cir. 2002) (quoting *United States v. Lampazianie*, 251 F.3d 519, 524 (5th Cir. 2001)).

At the June 10, 2019 evidentiary hearing, Pea's testimony morphed. Pea took the stand, he was again administered the oath, and he swore to tell the truth. On cross-examination, Sandman, as well as this Court, questioned Pea with respect to the statements he made at the rearraignment proceeding. While Pea initially stated that he told Judge Milazzo the truth at his rearraignment, he quickly changed his tune, advising the Court that he was not telling the truth at the rearraignment proceeding when he told Judge Milazzo that he had not been threatened to plead guilty; that he had not been induced or persuaded to plead guilty; that he had the opportunity to review the facts of his case, defenses he may have, and his plea agreement with his counsel; and that he was pleading guilty because he was, in fact, guilty.[50] Pea advised this Court that he lied at the rearraignment proceeding because he was scared and had been threatened by the government. The Court does not find Pea's testimony to be credible but, nevertheless, the Court considers each of Pea's allegations in his motion to withdraw his guilty plea.

---

[50] R. Doc. No. 60, at 25–29.

## B.

"[I]t is well settled that there is no absolute right to withdraw a guilty plea before the imposition of sentence. The standard for determining whether or not a defendant may withdraw his guilty plea prior to sentencing is whether for any reason the granting of the privilege seems fair and just." *United States v. Walton*, 537 F. App'x 430, 433 (5th Cir. 2013) (per curiam) (quoting *United States v. Minor*, 714 F.3d 319, 321 (5th Cir. 2013)).

> The defendant bears the burden of establishing a fair and just reason for withdrawing his plea. [*United States v. Brewster*, 137 F.3d 853, 858 (5th Cir. 1998)]. [The Fifth] Circuit considers seven factors when deciding whether the defendant has met this standard: whether (1) the defendant asserted his innocence, (2) withdrawal would cause the government to suffer prejudice, (3) the defendant delayed in filing the motion, (4) withdrawal would substantially inconvenience the court, (5) close assistance of counsel was available, (6) the original plea was knowing and voluntary, and (7) withdrawal would waste judicial resources. [*United States v. Carr,* 740 F.2d 339, 343–44 (5th Cir. 1984)]. The district court's decision to permit or deny the motion is based on the totality of the circumstances. *Brewster*, 137 F.3d at 858 (citation omitted). And the district court is not required to make findings as to each of the *Carr* factors. *Id.* (citing *United States v. Badger,* 925 F.2d 101, 104 (5th Cir. 1991)).

*United States v. Powell*, 354 F.3d 362, 370 (5th Cir. 2003). "Neither is any single factor dispositive." *Lampazianie*, 251 F.3d at 524. Pea has not met his burden of establishing a fair and just reason for withdrawing his guilty plea.

As to the first factor, Pea asserts that he is innocent of count seven—possessing a firearm in furtherance of a drug trafficking crime. "When a defendant claims innocence of a crime, that claim alone does not justify withdrawal of the guilty plea."

*United States v. Walton*, No. 09-157, 2012 WL 1088754, at *5 (E.D. La. Mar. 30, 2012) (Africk, J.), *aff'd*, 537 F. App'x 430 (5th Cir. 2013) (per curiam) (citing *United States v. Grant*, 117 F.3d 788, 789–90 (5th Cir. 1997) (noting that an assertion of innocence unsupported by specific facts is insufficient, standing alone, to justify allowing a defendant to withdraw a guilty plea); *United States v. Rojas*, 898 F.2d 40, 43 (5th Cir. 1990); *Carr*, 740 F.2d at 340). "Otherwise, the mere assertion of legal innocence would always be a sufficient condition for withdrawal, and withdrawal would effectively be an automatic right." *Id.* (quoting *Carr*, 740 F.2d at 344).

Pea asserts that the video proves his innocence as to count seven, but his testimony and allegations regarding the video are ambiguous at best. In his motion, Pea seems to assert that he never saw any video evidence before he plead guilty, alleging that he "was shown the video evidence by his second appointed counsel of record after the January 10th motion hearing" and after he pled guilty.[51] He further asserts that Parker-Davis did not show him all of the available evidence against him and, "had the video evidence been shown to him before taking the plea," he could have made a more intelligent decision as to whether or not to enter the plea agreement.[52] However, at the June 10, 2019 evidentiary hearing, on cross-examination, Pea testified that he remembered looking at a video with Sandman prior to his rearraignment, but that he did not see a gun in the video.

---

[51] R. Doc. No. 84-1, at 2.
[52] R. Doc. No. 84-1, at 2.

Johnson credibly testified that prior to the rearraignment, he reviewed the video with Sandman, Parker-Davis, and Pea frame-by-frame in order to capture and clearly show Pea the gun in the video. Pea does not allege that the government and Cimino showed him different videos, but only that he did not see a gun in any video. The Court's review of the video refutes Pea's allegations—a gun was clearly present.

Additionally, when Pea pled guilty, he signed the factual basis, which states that an undercover police officer was present during a drug transaction involving Pea and that Pea had a firearm present at the time.[53] The factual basis also stated that video evidence would show that a semi-automatic handgun was within Pea's reach during a drug transaction.[54] Sandman read the factual basis at the rearraignment, and Pea stated that he did the acts alleged therein:

> **SANDMAN**: . . . After the transaction, the undercover police officer informed DEA agents . . . that Pea had a firearm present during the drug transaction, and the video obtained revealed a semiautomatic handgun present and within reach of Pea during the transaction.
>
> . . .
>
> **THE COURT**: Mr. Pea and Mr. Jackson, do you wish to ask or have your attorney ask anything of the United States' attorney?
>
> **PEA**: No, ma'am.

---

[53] R. Doc. No. 42, at 2.
[54] R. Doc. No. 42, at 2.

. . .

**THE COURT**: All right. Have you heard the evidence and the facts that detail the charges against you, Mr. Pea?

**PEA**: Yes, ma'am.

. . .

**THE COURT**: Did you read the factual basis? . . . Mr. Pea?

**PEA**: Yes, ma'am.

**THE COURT**: Did you understand the government's evidence?

**PEA**: Yes, ma'am.

. . .

**THE COURT**: Are the statements made by the United States' attorney correct?

**PEA**: Yes, ma'am.

. . .

**THE COURT**: And do you agree that that is what you did?

**PEA**: Yes, ma'am.[55]

Based on the credible evidence provided at the evidentiary hearing, the Court finds that Pea saw the video depicting the gun's presence before he pled guilty.[56]

---

[55] R. Doc. No. 60, at 48–51.

[56] At the evidentiary hearing, Johnson testified that he met with Pea, Sandman, and Parker-Davis on the morning of the rearraignment to review the video because Pea had questions about the gun in the video and had accused Johnson of "splicing" or altering the video. Johnson credibly testified that he did not splice or in any way alter the video.

Furthermore, at his rearraignment, Pea did not dispute the acts depicted in the video and described in the factual basis, which he signed, and he advised the Court, under oath, that he was guilty of committing the acts alleged in connection with count seven of the indictment.

For substantially the same reasons noted above, Pea's contentions that he did not intend to plead guilty to count seven, that he could have made a more intelligent decision had he seen the video evidence as to count seven prior to his plea, and that his plea was involuntary,[57] all relating to the sixth *Carr* factor, *i.e.*, that the plea was not knowingly and voluntarily made, are equally unconvincing.

> For a guilty plea to be knowing and intelligent, "the defendant must have 'a full understanding of what the plea connotes and of its consequence.'" *United States v. Hernandez,* 234 F.3d 252, 255 (5th Cir. 2000) (quoting *Boykin v. Alabama,* 395 U.S. 238, 244 (1969)). The defendant must have notice of the nature of the charges against him, the defendant must understand the consequences of his plea, and he must understand the nature of the constitutional protections he is waiving. *Matthew v. Johnson,* 201 F.3d 353, 365 (5th Cir. 2000). For a guilty plea to be "voluntary," it must "not be the product of 'actual or threatened physical harm, or . . . mental coercion overbearing the will of the defendant' or of state-induced emotions so intense that the defendant was rendered unable to weigh rationally his options with the help of counsel." *Id.* (quoting *Brady v. United States,* 397 U.S. 742, 750 (1970)).

*Walton*, 2012 WL 1088754, at *6.

Judge Milazzo questioned Pea extensively regarding his understanding of the charges, the elements of the offenses, the rights he was waiving by pleading guilty

---

[57] *See* R. Doc. No. 84-1, at 2–3.

and forgoing a trial, and the rights he was waiving by entering the plea agreement. Pea stated on the record under oath at the rearraignment that he was not forced, threatened, persuaded, or influenced by anyone to plead guilty. After three motions to withdraw his guilty plea and an evidentiary hearing, the Court has not seen a scintilla of credible evidence to support Pea's accusations that the government or his attorney threatened him in any unlawful or inappropriate way to plead guilty.

In support of his claim, Pea maintains that on the morning of his rearraignment, Sandman and Johnson, with Parker-Davis present, advised Pea that if he did not plead guilty, Jackson would testify against him at trial and that he would face a fourteen-year sentence. Sandman questioned Pea as to the threat allegations, reminding Pea that he advised him of the ten-year mandatory minimum sentence he would receive as to counts one and seven, and that he specifically informed Pea that only the judge had the authority to impose a sentence. While Pea testified that he did not have a recollection of such advice, Johnson, who was at the meeting on the morning of the rearraignment, credibly confirmed that that was the extent of Sandman's advice and that Pea was never threatened with a specific sentence. Johnson also testified that Sandman advised Pea that if he decided to go to trial, any cooperation agreement he had with the government would be null and void.

To the extent that Pea was threatened with more charges than were charged in the original indictment and harsher penalties if he refused to plead guilty, a finding this Court does not make, "[t]hreats regarding additional charges or enhanced penalties are accepted practices in plea negotiations and are not considered the kinds

of threats which undermine the voluntariness of a guilty plea." *United States v. Felice*, 272 F. App'x 393, 396 (5th Cir. 2008) (per curiam). Pea has not met his burden as to the sixth *Carr* factor.

Relatedly, with respect to the fifth *Carr* factor, Pea asserts that he could not have had close assistance of counsel at the time of his plea because Parker-Davis did not show him the video evidence related to count seven and because she did not intervene when he was being threatened by the government.[58] Pea also asserted at the January 10, 2019 hearing on his first motion to withdraw his guilty plea, and seemed to assert at the June 10, 2019 evidentiary hearing, that he was not given "proper" time to review his plea agreement and factual basis before he pled guilty.[59]

"Determining whether a defendant received close assistance of counsel requires a fact-intensive inquiry." *United States v. McKnight*, 570 F.3d 641, 646 (5th Cir. 2009). Furthermore, "determining whether a defendant received close assistance of counsel under Federal Rule of Criminal Procedure 11(d)(2)(B) is distinct from determining constitutionally ineffective assistance of counsel under the Sixth Amendment." *Walton*, 2012 WL 1088754, at *10 (citing *McKnight*, 570 F.3d at 646).

At the rearraignment, Parker-Davis stated that she investigated the facts and the law applicable to Pea's case and any defenses that he might have, that she had a full opportunity to advise him of his rights, and that she was satisfied that he was pleading guilty voluntarily and understandingly with full knowledge of those rights

---

[58] R. Doc. No. 84-1, at 2–3.
[59] R. Doc. No. 59, at 5.

and the consequences of his plea.[60]  Pea advised the Court at the rearraignment that he agreed with her statements and that he was satisfied with Parker-Davis's advice and services.[61]  Contrary to his current allegations, Pea also confirmed at his rearraignment that he had the opportunity to review his plea agreement carefully with Parker-Davis[62] and that he read the factual basis.[63]

Parker-Davis negotiated a favorable plea deal on behalf of Pea, considering the fact that he only pled guilty to two of the seven counts charged against him in the indictment and no other federal drug or gun violations occurring prior to May 16, 2018 would be charged against Pea as long as he was truthful.[64]  In opposition, Pea only submits unsupported allegations, which are not credible. Pea has not satisfied the Court that Parker-Davis failed to provide close assistance of counsel.

As to the second *Carr* factor, whether the government would be prejudiced by the withdrawal of Pea's guilty plea, "[t]he Fifth Circuit has made clear that the absence of a showing of prejudice by the government is not sufficient to require withdrawal of the plea where no credible reason is proffered." *Walton*, 2012 WL 1088754, at *11 (quoting *United States v. Benavides*, 793 F.2d 612, 617 (5th Cir. 1986)) (internal quotation marks omitted).  "In other words, 'there is no occasion to inquire into the matter of prejudice unless the defendant first shows a good reason for being allowed to withdraw his plea. . . .'" *Id.* (quoting *Benavides*, 793 F.2d at 617).

---

[60] R. Doc. No. 60, at 41.
[61] R. Doc. No. 60, at 26–27, 43–44.
[62] R. Doc. No. 60, at 28–29.
[63] R. Doc. No. 60, at 50–51.
[64] R. Doc. No. 40, at 1.

Pea has not shown a good reason for the withdrawal of his guilty plea. Pea has filed three motions wherein he repeats his unsupported and unspecific allegations that the government and Parker-Davis in some way forced him to plead guilty. At the evidentiary hearing, Pea informed the Court that he lied under oath at his rearraignment because he had been threatened and because he was scared, but he did not provide any credible testimony or evidence to support these allegations.

Notwithstanding the lack of a good reason justifying relief, if Pea is permitted to withdraw his guilty plea, the government will suffer prejudice in that it will have to reopen a case that has been essentially closed for over six months, which the government asserts will require it to contact witnesses whose memories have faded, reveal the identities of an undercover officer and a confidential informant, as well as reveal law enforcement surveillance techniques.[65]

The Court also considers the third *Carr* factor—whether Pea delayed in filing the motion to withdraw his guilty plea. Pea has now been represented by three attorneys and he has filed three motions to withdraw his guilty plea. Pea was first represented by Parker-Davis at his rearraignment, but when issues arose, he moved *pro se*, for the appointment of new counsel and to withdraw his guilty plea.[66] After a hearing on the said motions, the Court appointed Pea new counsel and dismissed his first motion to withdraw his guilty plea, reserving Pea the right to refile the motion with the assistance of counsel.[67] About three months later, Pea's new counsel filed

---

[65] R. Doc. No. 72, at 9.
[66] R. Doc. No. 53.
[67] R. Doc. No. 57.

his second motion to withdraw his guilty plea,[68] and the Court set a hearing on the motion.[69] About a month later, only a week before the scheduled hearing on Pea's second motion to withdraw his guilty plea, Pea filed motions to substitute his appointed counsel for newly retained private counsel and to continue the hearing on the motion to withdraw his guilty plea.[70] The Court granted both motions and allowed Pea's private counsel to file a third motion to withdraw Pea's guilty plea.[71] That third motion—which is presently before the Court—was filed almost six months after Pea pled guilty.[72]

If anything, Pea has caused delay with respect to this Court's hearing on his motion. If the delay between the entry of his plea and the third motion to withdraw was not tactical on Pea's part,[73] it was close to it. This factor is at the very best a neutral one.

Finally, although the Court does not find that withdrawal of Pea's guilty plea would substantially inconvenience it, such withdrawal would waste judicial resources as Pea has not provided the Court with any evidence suggesting that the evidence

---

[68] R. Doc. No. 68.

[69] R. Doc. No. 70.

[70] R. Doc. Nos. 76 & 77.

[71] R. Doc. No. 82.

[72] R. Doc. No. 84.

[73] "The rationale for allowing a defendant to withdraw a guilty plea is to permit him to undo a plea that was unknowingly made at the time it was entered. The purpose is not to allow a defendant to make a tactical decision to enter a plea, wait several weeks, and then obtain a withdrawal if he believes that he made a bad choice in pleading guilty." *Walton*, 2012 WL 1088754, at *5 (quoting *Carr*, 740 F.2d at 345).

detailed in the factual basis is inaccurate or that there is credible evidence to dispute the same.

### III.

Pea has not demonstrated a fair or just reason for the withdrawal of his guilty plea. Having considered the *Carr* factors and the totality of the circumstances,

**IT IS ORDERED** that the motion to withdraw Pea's guilty plea is **DENIED**.

New Orleans, Louisiana, June 12, 2019.

_____
**LANCE M. AFRICK**
**UNITED STATES DISTRICT JUDGE**